UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSEPH KORTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:07CV2018 AGF |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This action is before this Court[1] for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Joseph Korte was not disabled and, thus, not entitled to Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 405(g). For the reasons set forth below, the decision of the Commissioner shall be reversed and remanded for further consideration.

Plaintiff, who was born on December 4, 1957, filed an application for SSI on May 4, 2005, at the age of 47, claiming a disability onset date of December 1, 1998, due to memory loss, back pain, nervousness, attention deficit hyperactivity disorder ("ADHD"), and depression.[2] After Plaintiff's application was denied at the initial administrative level, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and such

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

[2] The record suggests that a prior application for SSI filed by Plaintiff about 20 years earlier had been denied.

a hearing was held on August 22, 2006. In a decision issued on February 16, 2007, the ALJ found that Plaintiff had the residual functioning capacity ("RFC") to perform non-complex light work, and was not disabled under the Commissioner's Medical-Vocational Guidelines ("Guidelines"). Plaintiff's request for administrative review was denied on April 17, 2007. Plaintiff has therefore exhausted all administrative remedies and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ's assessment of Plaintiff's mental RFC was not supported by medical evidence, that the ALJ failed to fully develop the record and improperly based his decision on insufficient evidence that Plaintiff was exaggerating his condition, and that the ALJ erred in relying on the Guidelines and not obtaining the testimony of a vocational expert ("VE").

**Work History**

In a work history report submitted with his application for benefits, Plaintiff reported working as a car washer for three weeks in 1987; and as a laborer in a shoe factory and print shop in 1997, for two weeks each. (Tr. at 125.)

**Medical Record**

The ALJ's summary of the medical record is essentially accurate and fair. Significantly, with respect to Plaintiff's mental impairments, the record suggest that Plaintiff was developmentally delayed in early childhood, and that at the age of nine, he exhibited ADHD symptoms and was put on Dexedrine for a short while, which did not help him. He completed the 11th grade in special education classes at numerous different

schools. In January 1991, at the age of 23, Plaintiff was seen at a neurobehavioral clinic by Steven Rose, M.D., who diagnosed Plaintiff with borderline intelligence. Plaintiff's full scale IQ score was assessed as 79 (borderline intellectual functioning).[3] Id. at 166-70.[4]

On July 11, 2005, state consultant Thomas J. Spencer, Psy.D., conducted a psychological evaluation of Plaintiff in connection with Plaintiff's application for disability benefits. The record indicates that Dr. Spencer had for review Dr. Rose's 1981 evaluation. Plaintiff reported to Dr. Spencer that he had been unable to hold down a job because he could not remember procedures and instructions. Dr. Spencer noted that based on Plaintiff's vocabulary, grammar, and fund of knowledge, he appeared to function in the borderline range of intellectual ability. Dr. Spencer diagnosed a Global Assessment of Functioning score of 50-55,[5] but stated that he had "some reservations" about the results of memory testing because of the way Plaintiff answered some of the questions. Dr. Spencer also questioned the extent of Plaintiff's reported inattention and

---

[3] Borderline intellectual functioning is characterized by an IQ score of 71-84. Diagnostic & Statistical Manual of Mental Disorders (4th Ed.1994) ("DSM-IV") at 684.

[4] A page or pages from this report are missing from the record. Upon inquiry, counsel for the Commissioner informed the Court that the missing pages are not available. Doc. #19.

[5] GAF scores of 31-40 indicate "[s]ome impairment in reality testing or communication or "major" impairment in social, occupational, or school functioning; scores of 41 to 50 reflect "serious" impairment in these functional areas; scores of 51-60 indicate "moderate" impairment; scores of 61-70 indicate "mild" impairment. DSM-IV at 32.

lack of concentration because Plaintiff had managed to drive from Washington, Missouri, to Dr. Spencer's office in Rolla, Missouri (approximately 75 miles away) and find the office's new location after first going to the old office and getting the new address left on the door. Dr. Spencer recommended further testing for a more definitive diagnosis. Id. at 176-81.

On August 23, 2005, Dr. Spencer administered a Test of Memory Malingering ("TOMM") and re-administered the WAIS-III, which showed a full-scale IQ of 66. The results of the TOMM were consistent with malingering memory impairment, and accordingly Dr. Spencer was not comfortable finding that the WAIS-III result was accurate. Dr. Spencer opined that Plaintiff was "at the very least exaggerating the severity of his impairment," noting that Plaintiff was able to find Dr. Spencer's office without difficulty several weeks after his last appointment. Id. at 171-74.

On September 5, 2006, at Plaintiff's request, Licenced Professional Counselor Larry Cloninger interviewed and evaluated Plaintiff in connection with his application for disability benefits. Testing showed that simple calculations were mostly inaccurate, immediate memory was partially impaired and remote memory was moderately impaired, general knowledge was mostly inaccurate, and intelligence was low. Mr. Cloninger also stated that his findings confirmed earlier findings of chronic depression. Mr. Cloninger stated that he saw no indications of malingering. Id. at 158-65.

Reporting on a consultative orthopedic examination of Plaintiff on September 27, 2006, Arthur Greenberg, M.D., noted that Plaintiff's intellectual functioning seemed

normal, that his recent and remote memory for medical events was good, and that he seemed anxious. Id. at 147-48.

**Evidentiary Hearing**

Plaintiff, who was represented by counsel, testified that he was 58 years old,[6] single, and currently residing at home with his mother. He testified that he completed 11th grade, with all his academic classes in special education. He briefly attended a trade school, but could not "get through it." He could read and write and do very basic mathematics, such as addition and subtraction, but could not do division. Id. at 31-32.

Plaintiff testified that he was 6' 2" and weighed 212 pounds. This weight frequently fluctuated between 194 and 220 due to his habit of binge eating and then purging. Plaintiff stated that his last employment was as a punch press operator in the 1990s (he could not remember exactly when). He had two such jobs for about three weeks each, and each time was asked to leave because he could not remember instructions from the day before. Plaintiff testified that he had also worked briefly as a car washer, but could not do the work due to his back pain. Id. at 33-35.

He testified that his back problems stemmed from a car accident, and that the pain radiated down through his legs. He experienced this pain throughout the day at a level of seven or eight on a scale of one to ten, despite taking Advil and ibuprofen. Plaintiff got only about four hours of sleep a night because of pinching in his lower back, and this pain

---

[6] Based on a date of birth of December 4, 1957, Plaintiff's testimony regarding his age is obviously incorrect.

also limited his ability to sit for periods longer than 30 minutes. Plaintiff testified that he was born with "a third of a club" on each foot and that this caused him problems with walking. He testified that he could probably only walk 25 or 30 minutes before he had to sit down, and that he had difficulty stooping, standing back up, and bending. He could only lift five to ten pounds without experiencing pain, could no longer cut the grass or do other household chores, and had difficulty in crouching, crawling, maintaining a grip on objects, and writing for more than ten minutes. He testified that he was currently taking Advil and Aleve for his back pain, which helped "very little," but he was not on any prescribed medication, and had not seen any doctors about his back pain other than his primary care doctor because he could not afford it. Id. at 35-40.

Plaintiff testified that, due to his ADHD, he had a hard time remembering things for any length of time and concentrating. He often became frustrated and needed to take a break from "everything and everybody." He also had problems being around more than a few people and felt he was being threatened and that people wished to harm him. Plaintiff also expressed feelings of sadness and anxiety over financial issues. His mother currently paid for his food and other expenses. He testified that a friend brought him to the hearing because Plaintiff did not think he could figure out how to get there. He did do light household chores that did not involve much bending over. Id. at 40-42.

Plaintiff testified that climbing stairs also caused him back pain and that sometimes he slept on the couch downstairs to avoid climbing the steps to go upstairs. At that point in the hearing, Plaintiff asked if he could stand up, and, apparently, he did so.

6

He stated that visits to the chiropractor only eased his back pain for about two weeks. He testified again that he had trouble remembering things and that he felt mentally taxed. On the job, he could not remember how to do routine tasks from one day to the next and had to keep asking others what he was supposed to do. Anxiety would then make his heart beat very fast, as if he were having an anxiety attack, and force him to go to the restroom several times a day just to escape the pressure. Id. at 42-44.

Plaintiff testified that he saw a doctor about eight months prior to the hearing, and that his visit was in regard to his Medicaid application, which was denied. Plaintiff stated that his back problem first began about three months after he was in a car accident. He could not remember when the accident occurred but thought that it was when he was 39 or 40 years old. Id. at 44-47.

**ALJ's Decision**

The ALJ found that Plaintiff's degenerative disk disease of the spine and history of ADD limited his ability to perform work-related activities, and were thus severe impairments. The ALJ found, however, that these impairments or combination of impairments did not meet or medically equal a deemed-disabling impairment listed in the Commissioner's regulations. Upon summarizing the medical record and Plaintiff's testimony, the ALJ noted that no medical source opined that Plaintiff was unable to work due to his physical condition, and that Plaintiff failed to demonstrate any neurological abnormalities, sensory or motor deficits, or muscle spasms or atrophy. Id. at 19-21.

The ALJ found that while Plaintiff could not perform arduous or strenuous work

activity, he had the RFC to perform light work, in that he could frequently lift ten pounds, and occasionally lift up to 20 pounds; and could walk, stand, and sit for the course of an eight hour workday without significant limitations. The ALJ noted that under the Guidelines, an individual with Plaintiff's vocational factors (age, education, work experience) who could perform light work was not disabled. The ALJ then considered whether Plaintiff had any mental impairments which precluded the full range of light work. Id. at 21-22.

The ALJ pointed to Dr. Greenberg's October 2006 notation that Plaintiff demonstrated normal intellectual functioning with good memory for even remote medical events. The ALJ also referenced Dr. Spencer's August 2005 observation that Plaintiff demonstrated good memory and concentration in driving and finding Dr. Spencer's office. The ALJ acknowledged the September 2006 conclusions of Mr. Cloninger that Plaintiff had marked limitations for performing a variety of work-related activities due to his emotional and cognitive difficulties, but the ALJ chose to give more weight to the evaluations and conclusions of Dr. Spencer, who was a psychologist. The ALJ also cited to Dr. Spencer's opinion that Plaintiff was possibly malingering and definitely exaggerating his symptoms. Id.

In sum, the ALJ concluded that Plaintiff had a history of ADD and could not perform complex and detailed work tasks. However, the ALJ found that this limitation did not "significantly compromise" Plaintiff's ability to perform the full range of light work. The ALJ noted that in reaching this conclusion, he considered Plaintiff's

8

subjective complaints and non-exertional limitations pursuant to Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). Id.

The ALJ found that Plaintiff had a very poor work history, making it difficult to evaluate his ability to perform past relevant work. The ALJ found that Plaintiff's claim of not being able to afford treatment for his back pain was not credible because Plaintiff failed to demonstrate that he had ever been refused any treatment or prescription medication due to an inability to pay. The ALJ observed that Plaintiff had reported to Dr. Spencer that he did odd jobs for money; and that Plaintiff had never undergone physical therapy or an exercise program, which the ALJ noted required no ongoing financial expenditure; and that no doctor had reported Plaintiff's pain at a disabling severity. The ALJ found Plaintiff's allegations of disabling pain and memory and concentration problems not credible, again noting Dr. Spencer's conclusion that Plaintiff was at least exaggerating and possibly malingering. Id.

The ALJ commented that Plaintiff was able to obtain a driver's license and demonstrated sufficient concentration ability to drive without restriction and medication. Plaintiff had been able to find his way to doctors' offices on his own. The ALJ found that while Plaintiff could not perform complex and detailed tasks, he could perform entry-level work without additional limitations. The ALJ found that Plaintiff had not demonstrated a high level of motivation to work because he had not made any attempt to work since 1997 and had not sought vocational rehabilitation services. The ALJ, therefore, concluded that Plaintiff had the capacity to perform light work activity, and

9

that he was thus not disabled pursuant to the Guidelines. Id. at 22.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must affirm the Commissioner's decision "so long as it conforms to the law and is supported by substantial evidence on the record as a whole." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (citation omitted). This "entails 'a more scrutinizing analysis'" than the substantial evidence standard. Id. (quoting Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989)). The court's review "'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision'"; the court must "'also take into account whatever in the record fairly detracts from that decision.'" Id. (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001) (citation omitted)). Reversal is not warranted, however, "'merely because substantial evidence would have supported an opposite decision.'" Id. (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995) (citation omitted)).

To be entitled to benefits, a claimant must demonstrate an inability to engage in any substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Work which exists in the national economy "means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id. § 423 (d)(2)(A). Both the

10

impairment and the inability to engage in substantial gainful employment must last or be expected to last for not less than 12 months.  Barnhart v. Walton,  535 U.S. 212, 217-22 (2002).

The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability.  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If so, benefits are denied.  If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments.  A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521(a).

If the claimant does not have a severe impairment that meets the duration requirement, the claim is denied.  If the impairment is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the impairments listed in Appendix I.  If the claimant's impairment is equivalent to a listed impairment, the claimant is conclusively presumed to be disabled.  Otherwise, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work, if any, as he actually performed it, or as generally required by employers in the national economy.  If the claimant has past relevant work and is able to perform it, he is not disabled.  If he cannot perform his past relevant work or has no past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform a

significant number of other jobs in the national economy that are consistent with the claimant's impairments and vocational factors -- age, education, and work experience.

If a claimant can perform the full range of work in a particular category of work (very heavy, heavy, medium, light, and sedentary) listed in the Commissioner's regulations, the Commissioner may carry this burden by referring to the Guidelines, which are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment. Where a claimant cannot perform the full range of work in a particular category listed in the Guidelines due to nonexertional impairments, such as pain or mental limitations, the Commissioner cannot carry this burden by relying exclusively on the Guidelines, but must consider testimony of a VE as to whether there exist jobs in the national economy which a person with Plaintiff's RFC and vocational factors could perform. Sanders v. Sullivan, 983 F.2d 822, 823 (8th Cir. 1992).

**ALJ's Assessment of Plaintiff's RFC and Reliance on the Guidelines**

Plaintiff's arguments all involve his alleged mental impairments. He argues that the ALJ's conclusion that the only limitation these impairments imposed upon his ability to work was that he could not do complex and detailed work is not supported by the record. He further argues that his metal impairments preclude the reliance upon the Guidelines in determining whether he is disabled, and require the testimony of a VE. The Court agrees.

The Eighth Circuit has defined RFC as the ability to do the requisite work-related

12

acts "day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc), abrogated on other grounds, 524 U.S. 266 (1998). A claimant's RFC is a medical question. Hutsell v. Masanari, 259 F.3d 707, 711-12 (8th Cir. 2001). "Where the medical evidence is equally balanced . . . the ALJ resolves the conflict." Id.; see also Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) ("It is the ALJ's function to resolve conflicts among the various treating and examining physicians."). However, to properly determine a claimant's RFC, an ALJ is " required to consider at least some supporting evidence from a [medical] professional." Hutsell, 259 F.3d at 712.

Here, Dr. Spencer believed that Plaintiff was exaggerating his memory impairment, calling into question the validity of Plaintiff's score of 68 on the WAIS-III administered in August 2006. It is not entirely clear whether Dr. Spencer also questioned the IQ score of 79. As noted above, aside from the test score, Dr. Spencer found that based upon Plaintiff's vocabulary, grammar, and fund of knowledge, he appeared to function in the borderline range of intellectual ability. Furthermore, a score of 79 was consistent with Dr. Rose's 1981 report.

If indeed Plaintiff has borderline intellectual functioning, reliance on the Guidelines by the ALJ was inappropriate. See Morrison v. Astrue, No. 4:07CV1191-DJS, 2008 WL 2813353, *17 (E.D. Mo. July 18, 2008) (reversing and remanding where ALJ determined that the plaintiff could perform simple light work, and was not disabled under the Guidelines; "Without identifying plaintiff's specific mental limitations and

13

fitting such limitations within the framework of the Guidelines, it cannot be said that reliance on the Guidelines alone without eliciting testimony from a vocational expert was permissible."); see also Swope v. Barnhart, 436 F.3d 1023, 1024-25 (8th Cir. 2006) (reversing and remanding case for further consideration where ALJ did not include the plaintiff's borderline intellectual functioning - full-scale IQ of 83 - in the hypothetical posed to the VE) (quoting Grissom v. Barnhart, 416 F.3d 834, 837 (8th Cir. 2005) (borderline intellectual functioning "is a significant nonexertional impairment that must be considered by a vocational expert")).

Accepting, as did the ALJ, Dr. Spencer's opinion that Plaintiff was exaggerating his mental impairments, the record remains devoid of substantial evidence as to the level of Plaintiff's mental impairments and their affect on his work-related functional abilities. Upon remand, the ALJ should reconsider Plaintiff's RFC, and may need to further develop the record on the issue of Plaintiff's mental functioning. The ALJ will probably need to obtain vocational expert testimony to establish that there are jobs available in the national economy that a person with Plaintiff's physical and mental abilities could perform.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and the case is **REMANDED** for further proceedings.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated on this 23rd day of February, 2009.